# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MARTINEZ, | CV F   03 5125 OWW SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING PARTIAL MOTION FOR SUMMARY JUDGMENT (Docs. 58, 61.) |
| W. SHAW, et. al., | |
| Defendants. | |

**A.   RELEVANT PROCEDURAL HISTORY**

John R. Martinez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed the instant federal action on January 30, 2003. On July 30, 2003, Plaintiff filed an Amended Complaint. On August 5, 2004, the Court issued an order finding Plaintiff's Amended Complaint stated cognizable claims against Defendant Shaw for excessive force; Defendants Shaw, Ybarra, Comfort, Berkeler, Cobbs, Rocha, and Holland for violating Plaintiff's right to due process; and Defendants Shaw, Ybarra, Comfort, Lopez and Rodriguez for

1

retaliation.  The Court also found that the Amended Complaint did not state a cognizable claim against Defendant Alameida.  Thus, on August 27, 2004, the Court issued Findings and Recommendations that Defendant Alameida be dismissed from the action.  The District Court adopted the Findings and Recommendations on October 13, 2004, and Defendant Alameida was dismissed from the action.

On December 10, 2004, Defendants moved to dismiss Defendants Rocha and Holland from the action on the grounds that Plaintiff did not state a cognizable constitutional claim against them for participating in the appeals process.  Plaintiff did not oppose the Motion and instead, filed his own Motion to Dismiss Defendants Rocha and Holland from the action on December 30, 2004.  Plaintiff further requested Defendant Comfort be dismissed from the action based on his belief he could not prevail against him for a constitutional violation.  Defendants did not oppose the Motion.  On February 3, 2005, the Court issued a Report and Recommendation that Plaintiff's Motion to Dismiss be construed as a Statement of Non-Opposition to Defendants' Motion to Dismiss Defendants Comfort, Rocha and Holland.  The District Court adopted the Recommendation on April 7, 2005, and Defendants Comfort, Rocha and Holland were dismissed from the case.

On November 18, 2005, the remaining Defendants, Cobbs, Berkeler, Shaw, Ybarra, Rodriguez and Lopez filed a Motion for Summary Judgment.  An Amended Motion for Summary Adjudication was filed by Defendants on November 22, 2005, and is currently pending before the Court.  Plaintiff filed his Opposition to the Motion on May 22, 2006.  Defendants filed a Reply to the Opposition on June 21, 2006.  Plaintiff then filed a pleading titled "Supplemental Memorandum of Points and Authorities in support of Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment."  In this pleading, Plaintiff addresses Defendants' Reply to the Opposition.  By separate Order, the Court construed the pleading as a Surreply to the Reply and Ordered that the pleading be stricken from the record as unauthorized.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

1  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (*citation omitted*).

**C. UNDISPUTED FACTS**[1]

1. Prior to his incarceration, Plaintiff was a member of the street gang known as "Plas."  Exh. A, Plaintiff's Deposition ("Pl.'s Dep.") at 18:24021:21.
2. Plaintiff was convicted of second degree murder in the death of a member of another street gang called "Alliance."  Id.

---

[1] The following facts are undisputed for the purpose of this Motion. Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed.  Local Rule 56-260(b).  Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by plaintiff's verified complaint and opposition.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

4

3. Prior to being housed at Substance Abuse Treatment Facility ("SATF") in Corcoran, California, Plaintiff was at Pelican Bay State Prison. Declaration of Defendant O.A. Ybarra ("Ybarra Decl. "), ¶ 5.

4. While in custody of California Department of Corrections and Rehabilitation ("CDCR"), Plaintiff assaulted another inmate. He was then sent to Pelican Bay State Prison where he was housed in the Secured Housing Unit ("SHU") for assault. Pl.'s Dep. 27:6-28:15.

5. Plaintiff was housed with an inmate who was a validated associate of the EME (Mexican Mafia) prison gang. Pl.'s Dep 29:2-25

6. Plaintiff was received at SATF on March 29, 2001. In his central file at that time was a report from Pelican Bay State Prison, dated January 2001, indicating that a confidential informant had disclosed plans for Southern Hispanics to attack staff members at Pelican Bay. Plaintiff was one of several inmates identified by this informant as a member of the Southern Hispanics. Ybarra Decl. ¶¶ 6, 8.

7. "Southern Hispanics" is the name of a group affiliated with the prison gang known as the Mexican Mafia, also known by its initials "EME." Northern Hispanics are a group associated with another Latino prison gang, Nuestra Familia. Ybarra Decl. ¶ 7.

8. There also was another report in Plaintiff's central file from Pelican Bay when he was received at SATF. That report detailed an interview with a different confidential informant. Ybarra Decl. ¶ 9.

9. In October 2001, a third informant was personally debriefed by Officer Shaw. Declaration of W. Shaw ("Shaw Decl.") ¶ 3.

10. Finally, in April 2002, John Anthony Crossthwaite was debriefed by Officer Shaw. Crossthwaite, a former associate of the Mexican Mafia, attested to Plaintiff's associate with that gang. Crossthwaite has personal knowledge of Plaintiff's involvement, as Plaintiff was Crossthwaite's subordinate for a time at SATF. In his declaration, Crossthwaite describes Plaintiff's gang activities, including drug

5

1 trafficking and assaults. He also verified that the information he gave Defendant
2 Shaw is true. Declaration of John Anthony Crossthwaite ("Crossthwaite Decl.").
3 11. Based upon the information in Plaintiff's file, Plaintiff was placed in administrative
4 segregation on November 28, 2001, pending investigation of his gang status. Exh.
5 B, Motion for Summary Judgment ("Mot. Summ. J."); Ybarra Decl., ¶ 11.
6 12. Lt. Ybarra authorized the placement and Officer Shaw served the notice upon
7 Plaintiff. Exh. B, Mot. Summ. J.; Ybarra Decl. ¶ 11; Shaw Decl. ¶ 4.
8 13. Plaintiff admits having received this notice. Pl.'s Dep., 107:20-108:12.
9 14. On December 18, 2001, Plaintiff was validated as a gang associate, and assigned an
10 indeterminate term in the SHU, pursuant to title 15, section 3378. Exh. C, Mot.
11 Summ. J.; Declaration of Keri Berkler ("Berkeler Decl."), ¶ 3.
12 15. Plaintiff was presented with a copy of three confidential information disclosure
13 forms (CDC form 1030), which gave him information about the nature of the charges
14 against him without disclosing the confidential source of that information. Plaintiff
15 acknowledges receiving these forms on December 27, 2001. Exh. D, Mot. Summ. J.;
16 Ybarra Decl., ¶ 13; Pl.'s Depo., 112:14-114:4.
17 16. Plaintiff appeared at the institutional classification meeting on December 6, 2001,
18 and was given the opportunity to participate in the hearing, object to the proposed
19 validation and to ask the basis for the investigation. Pl.'s Depo., 118:3-120:12.
20 17. Plaintiff was allowed to contest his gang validation though the appeal process, which
21 he did. Exhs. E, Mot. Summ. J.; Pl.'s Depo., 122:10-25.
22 18. Plaintiff's status is reviewed by the institutional classification committee every 6
23 months. The results of these hearings are placed in his central file, and he has an
24 opportunity to review that file. Pl.'s Depo., 139:3-140:25.

**D. ANALYSIS**

### *1. Summary of Complaint*

The events at issue in the instant action allegedly occurred at California Substance Abuse Treatment Facility, where Plaintiff was incarcerated at the time. In the Amended Complaint,

1  Plaintiff names W. Shaw, D. A. Ybarra, R. M. Comfort, F. A. Rodriguez, Lonnie Lopez, Kerri
2  Berkeler, J. F. Rocha, K. Holland, J. Cobbs, Ed Alameida as Defendants.[2]
3     Plaintiff alleges that as a result of his activities as a Men's Advisory Council (MAC)
4  representative, being a jailhouse lawyer, and his pursuit of administrative grievances, Defendants
5  retaliated against him by placing him in administrative segregation and validating him as a gang
6  associate in violation of Due Process.[3]  Plaintiff states specifically that he was not afforded the
7  necessary notice of the charges, the opportunity to be heard or present witnesses and that this
8  resulted in the receipt of an indeterminate SHU term at California State Prison-Corcoran.
9  Further, the Amended Complaint alleges that the evidence used to validate Plaintiff as a gang
10 member was insufficient in that it did not constitute "some evidence."  Finally, Plaintiff alleges
11 that Defendant Shaw used excessive force against him in retaliation for the verbal grievances
12 concerning Defendant Rodriguez and C/O Martin.

### *2. Due Process - Gang Validation Process*

14    An inmate may be identified by CDCR staff as a potential gang member or associate
15 based on his behavior.  An Institutional Gang Investigator ("IGI"), who generally has experience
16 with gangs, investigates the inmate's possible gang activities and determines whether there is
17 sufficient evidence to validate the inmate. 15 Cal.Code Regs. § 3378(c).   The IGI also interviews
18 the inmate to allow him to rebut the evidence supporting the contemplated validation.
19    Under California State Regulations, an inmate may be validated as a member or associate
20 of a gang based on a *minimum* of three or more source items indicating gang activity, such as
21 self-admission, writings, tattoos, photos, information from informants, and association or
22 communication with other gang members or associates.  15 Cal.Code Regs. § 3378(c)(3), (4).
23 The inmate is normally placed in administrative segregation ("Ad-Seg") pending review and if
24 validated, assessed an indeterminate administrative segregation term in the Secured Housing

---

[2]Defendants Alameida, Rocha, Holland and Comfort were later dismissed from the action. (Docs. 19, 39.)

[3]Although Plaintiff may have conceded that his Due Process claims are against Defendants Ybarra, Shaw and Cobbs only, no Second Amended Complaint or Motion to Dismiss those claims has been formally filed by Plaintiff.  Plaintiff may not amend his Complaint via a deposition.  Accordingly, these Defendants and claims remain part of the action.

1  Unit. Id.; 15 Cal.Code Regs § 3341.5(c)(2).  Once validated as a gang member/associate, an
2  inmate can be released under several circumstances, the most common of which are debriefing
3  (i.e., disassociating himself from the gang), inactivity in the gang and release from custody.  15
4  Cal.Code Regs. §§ 3378(c)(2)(5); 3341.5(c)(4).

### *3. Due Process Claim*

Interests that are procedurally protected by the Due Process Clause may arise from the Due Process Clause itself and the laws of the states.  Hewitt v. Helms, 459 U.S. 460, 466 (1983) *overruled, in part, on other grounds by* Sandin v. Conner, 515 U.S. 483, 484 (1995); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976).   The Ninth Circuit has held that the hardship associated with administrative segregation is not so severe as to violate Due Process. See Toussaint v. McCarthy, 801 F.2d. 1080, 1091-91 (9th Cir. 1986).  However,  changes in the conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance" and where the restraint "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 477, 484-87, 115 S.Ct. 2293 (1995).

The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2394-95 , 162 L.Ed.2d. 174 (2005).  Further, the assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (*quoting* Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As such, Plaintiff is entitled to the minimal procedural protections set forth in Toussaint v. McCarthy, such as notice, an opportunity to be heard and periodic review.  Bruce, 351 F.3d at 1287 (*citing* Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986)).

Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons.  Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05.  This standard is met if

there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. at 1105.  The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).  The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation.  See Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir.2003).

In addition, there is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); see also, Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir.1990), *cert. denied*, 502 U.S. 874, 112 S.Ct. 213  (1991) (considering accuracy of polygraph results when used as evidence to support placement in administrative segregation); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987) (evidence relied upon by a prison disciplinary board must have "some indicia of reliability"). When this information includes statements from confidential informants, as is often the case, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable." Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2851 (1988).  The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." Id.  Defendants bear the burden of showing  "some evidence" in the record to support an administrative segregation decision and that evidence must have some indicia of reliability." Toussaint v. Rowland, 711 F.Supp. 536, 542 (N.D. Cal. 1989) ("Toussaint V"), *aff'd in part, rev'd in part sub nom,* Toussaint v. McCarthy, 926 F.2d 800 (9th Cir. 1990) ("Toussaint VI"), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213 (1991).

Here, Defendants argue and present evidence that, in accordance with Toussaint, Plaintiff was provided with all of the process he was due under the Constitution.  Specifically, Defendants cite to evidence that Plaintiff was notified on November 28, 2001, that he was being placed in administrative segregation pending investigation of his gang status. Ybarra Decl. ¶ 11; Exh. B, Mot. Summ. J.; Shaw Decl. ¶ 4; Pl.'s Opp'n at 3-6; Exh. B to Pl.'s Opp'n.  Plaintiff appeared at

1  an institutional classification hearing on December 6, 2001, wherein he was given the
2  opportunity to object to the proposed validation and question the basis for the investigation.  Pl.'s
3  Dep.; Pl.'s Opp'n at 4:15; Exh.G, Pl.s' Opp'n,  On December 18, 2001, Plaintiff was validated as
4  a gang associate.  Exh. C, Mot. Summ. J.;  Berkler Decl.; Exh. K, Opp'n.  Plaintiff was provided
5  with copies of four CDC 1030 forms notifying Plaintiff of the charges against him without
6  disclosing the confidential sources of that information.  Exh. D, Mot. Summ. J.; Exh. L, Pl.'s
7  Opp'n.  Plaintiff acknowledges that he received this information.  Pl.'s Dep., 112-114; Pl.'s
8  Opp'n at 5:20.  Finally, Plaintiff has received periodic reviews of his classification to the SHU.
9  Pl.'s Dep., 139:3-140:25; Am. Compl.¶ 21.  The Court finds that Defendants have met their
10 initial burden of informing the Court of the basis for their Motion and identifying those portions
11 of the record which they believe demonstrate the absence of a genuine issue of material fact.  The
12 burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually
13 does exist. See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

14       As stated above, in attempting to establish the existence of this factual dispute, Plaintiff
15 may not rely upon the mere allegations or denials of his pleadings, but is required to tender
16 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
17 support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
18 First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747,
19 749 (9th Cir. 1973).

20       In Opposition, Plaintiff merely argues that any misconduct indicating gang activity that
21 justifies his placement in administrative segregation constitutes a rule infraction and thus, a Rules
22 Violation Report must be issued and the appropriate rules and regulations followed.  Plaintiff
23 argues that no such rules violation report issued and thus, he was denied the appropriate notice
24 and hearing.  Pl.'s Opp'n at 20-21.  Plaintiff's procedural due process challenge is thus, to the
25 procedure used.  This is supported by inmate appeal filed by Plaintiff concerning his validation.
26 Exhibit E to the Motion for Summary judgment is a copy of a Director's Level Appeal Decision
27 indicating that Plaintiff's contention on appeal was that he was not issued a Rules Violation
28 Report relative to his gang activity and prior to his commitment to the SHU.  Exh. E, Mot.

Summ. J.  Plaintiff was informed that a "complete disciplinary action" was not required for placement of inmates in the SHU who have been validated as gang members.  Id.  Plaintiff was also informed of the pertinent regulations, namely California Code of Regulations 3270 and 3341.5.  Id.  Plaintiff concedes throughout his pleadings that he was notified of his SHU placement pending a gang investigation, provided a hearing at which he could contest the charges and has been afforded periodic reviews.  Despite Plaintiff's firm belief that a Rules Violation Report should have issued, the undisputed evidence shows that Plaintiff was afforded with the process he was due under the law.  Accordingly, the Court finds the Defendants are entitled to summary judgment on Plaintiff's allegations concerning the denial of the process due him under Toussaint.

Plaintiff's Amended Complaint also alleges that the evidence used to validate him as a gang member is "unreliable" and thus, does not constitute "some evidence."  Am. Compl. at 25:25-28, 28:4-6.

In their Motion for Summary Judgment, Defendants provide the Court with copies of the three CDC 1030 forms which were provided to Plaintiff concerning his validation as a gang member as well as a declaration of a former gang member John Anthony Crosswaithe.  The declaration of Mr. Crossthwaite implicates Plaintiff in gang activity.  The Court notes however, that Mr. Crossthwaite did not debrief and provide Defendant Shaw with information concerning Plaintiff's alleged gang activity until April of 2002.  Plaintiff was validated as a gang member on December 18, 2001, prior to Mr. Crossthwaite's debriefing.  Neither the Declaration of Defendant Keri Berkeler or the CDC 128-B-2 form validating Plaintiff indicate that information provided by Mr. Crosswaithe's constituted one of the three source items used to validate Plaintiff.  Berkeler Decl.; Exh. C, Mot. Summ. J.  As such, the declaration provided by Mr. Crossthwaite cannot constitute "some evidence."

Further, although Defendants argue that there is sufficient evidence to support Plaintiff's validation in the form of information supplied by confidential informants, Defendants have provided the Court with only the disclosure statements issued to Plaintiff on December 27, 2001. Exh D, Mot. Summ. J.  As stated by Defendants, the disclosure forms serve to provide Plaintiff

11

with information "about the nature of the charges against him without disclosing the confidential source of that information." Mot. Summ. J. at 4. The disclosure forms themselves reference confidential memoranda and debriefing statements on which the validation was based and further that this information is contained in the "confidential Section of [Plaintiff's] C-file." Exh. D, Mot. Summ. J. However, these confidential memoranda and/or debriefing statements were not provided to the Court in support of the Motion for Summary Judgment. While under some circumstances, one source item may be sufficient to satisfy the "some evidence" standard, the disclosure statements alone do not constitute a source item as they merely describe the source item relied on. Because no source items are before the Court, the Court cannot render a determination that there existed "some evidence" to support the tribunals decision to validate and segregate Plaintiff or that the source items have an "indicia of reliability" in satisfaction of due process. Accordingly, Defendants have failed to meet their burden on this portion of Plaintiff's Due Process claim and the Court will RECOMMEND that the Motion for Summary Judgment be DENIED.

### 3. *Vagueness/Overbreadth*

Plaintiff argues that the California Code of Regulations Section 3378(c)(4) is over broad because Plaintiff's "'associations' with fellow prisoners, some who may very well be gang affiliated, are the result of legal assistance and lawful associations and speech." Am. Compl. at 26.

A challenge for vagueness may arise when the regulation fails to clearly define its prohibitions and a challenge for overbreadth may arise when the regulation prohibits protected conduct. Grayned v. City of Rockford, 408 U.S. 104, 108, 114-115 (1972). The focus of a vagueness claim is whether the regulation "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' or ' . . . . authorizes or even encourages arbitrary and discriminatory enforcement.'" Gospel Missions of America v. City of Los Angeles, 419 F.3d 1042, 1047 (9th Cir. 2005), *quoting* Hill v. Colorado, 530 U.S. 703, 732 (2000)). The focus of a claim for overbreadth is whether a regulation "sweeps within its prohibitions what may not be punished" under the Constitution. Grayned, 408 U.S. at 115. In

the prison context, when regulations or policies are alleged to impinge up an inmate's protected rights, subject to certain exceptions, the regulation is analyzed under the test set forth in Turner v. Safley, 482 U.S. 78 (1987). Bahrampour v. Lampert, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying Turner test despite inmate's assertion that vagueness and overbreadth claims must be considered separate and apart from application of Turner test.)

In this case, Defendants state that Plaintiff clarified at his deposition that his claim for relief concerned the vagueness of the statute. However, as stated above, Plaintiff may not amend his Complaint via his deposition. Further, a review of the Amended Complaint makes clear that Plaintiff is alleging that the regulation is over broad in that it punishes his right of association. Defendants do not, however, set forth any argument that the regulations or policies satisfy the Turner test. As such, the Court has no alternative but to RECOMMEND that Defendants' Motion with respect to the vagueness/overbreadth of the regulation be DENIED.

### 4. Retaliation

In the Amended Complaint, Plaintiff asserts that Defendants Shaw, Ybarra, Comfort, Lopez and Rodriguez initiated gang validation proceedings against him in "direct retaliation for Plaintiff's administrative grievances against Defendant Comfort, C/O Martin and Defendant Lopez." Am. Compl. at 23:18-23.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (*quoting* Sandin v. Conner, 515 U.S. 472, 482 (1995)).

In support of the Motion for Summary Judgment, Defendants cite to the Declaration of

Defendant Ybarra. Defendant Ybarra states that based on the information he had regarding Plaintiff's association with the EME gang, he directed Plaintiff be placed in administrative segregation on November 28, 2001, pending the investigation of Plaintiff's gang status. Ybarra Decl., ¶ 11; Exh. B, Mot. Summ. J. Defendant Ybarra also states that he was unaware of any complaints initiated by Plaintiff against Officer Martin and Defendant Lopez, or any other prison personnel and that the initiation of the investigation was made solely based on the information he received with regard to Plaintiff's gang affiliation. Id. Defendants also produce documentation that the source items reflecting some gang association by Plaintiff and used to validate him predated the date of Plaintiff's placement in administrative segregation on November 28, 2001. Exh. C, D, Mot. Summ. J. Based on the evidence before the Court, the Court concludes that Defendants have met their burden of pointing to that portion of the record that demonstrates the absence of a genuine issue of material fact on this claim. The burden now shifts to Plaintiff.

In Opposition, Plaintiff clarifies that the "grievance" made against Defendant Lopez and C/O Martin consisted of verbally informing two individuals on the Men's Advisory Committee of activities he believed constituted misconduct (a romantic affair). As a result, these two individuals met with Defendant Rodriguez about the alleged misconduct on November 21, 2001. Plaintiff states that Defendant Rodriguez stated to him that he was informed of the alleged misconduct by Defendant Rodriguez and that they "were aware of the situation and it [would] be handled." Pl.'s Opp'n at 13. Plaintiff states that three days later, on November 28, 2001, he was issued a notice placing him in administrative segregation pending an investigation into his alleged gang activities. Plaintiff argues that the notice issued by Defendant Ybarra on November 28, 2001 was falsified. As noted above, Plaintiff may not rest on the mere allegations or denials. Plaintiff is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). Other than his assertions that the placement notice was falsified by Defendant Ybarra, Plaintiff presents no such evidence to demonstrate that a genuine issue of material fact exists with respect to his being validated as a

gang member in retaliation for protected activity.  On the contrary, the undisputed evidence shows that Plaintiff was validated based on documentation reflecting gang activity.  Accordingly, the Court will RECOMMEND that summary judgment on the retaliation claim be GRANTED with respect to all named Defendants.

### 5. Excessive Force

As noted above, prison officials may not retaliate against a prisoner for pursuing legal actions against his custodians.  Rizzo v. Dawson, 778 F.2d 557 (9th Cir. 1985.)  When no impairment of the plaintiff's rights has occurred, there is no need for the protection provided by a cause of action for retaliation.  American Civ. Liberty Union of Md. V. Wicomico County, 999 F.2d 780, slip. Op. At 8 (4th Cir. 1993).  Section 1983 requires a causal connection between the official's conduct and the constitutional tort, Monel v. Dep't. of Social Services, 436 U.S. 658 (1978), and § 1983 "should be read against the backdrop of tort liability which makes a man responsible for the natural consequences of his actions."  Monroe v. Pape, 365 U.S. 167, 187 (1961.)

In this case, Plaintiff alleges that Defendant Shaw used excessive force against him on November 28, 2001, when Plaintiff was taken to administrative segregation.  Specifically, Plaintiff states that Defendant Shaw "placed handcuffs on Plaintiff very tight, slammed Plaintiff's head against the wall and began to crush Plaintiff's fingers."  Plaintiff states that this action was "malicious, sadistic and to cause harm and a form to discourage Plaintiff's Complaints."  Am. Compl. at 8, 24.

In support of the Motion for Summary Judgment, Defendants provide the declaration of Defendant Shaw.  Defendant Shaw denies that he took any action against Plaintiff in retaliation for any reason.  Defendant Shaw further states that his actions with regard to Plaintiff were done pursuant to his investigative activities and were done so at the direction of his superior.  Shaw Decl. at ¶ 6.

Plaintiff did not address the excessive force claim in his Opposition to the Motion for Summary Judgment and thus, does not present evidence to refute the allegation that there is no disputed issue of material fact that Defendant Shaw's actions were taken in retaliation for his

filing grievances or making complaints.  Thus, Plaintiff fails to meet his burden in demonstrating a genuine issue of material fact exists with respect to his claim against Defendant Shaw.

       The Court notes further that Plaintiff concedes in his deposition that he did not know whether Defendant Shaw, then a gang investigator, had any knowledge of Plaintiff's actions regarding the conduct of Officers' Martin and Lopez precisely because he was a gang investigator.  Pl.'s Dep. at 72: 9-16.  Plaintiff also concedes that the handcuffs placed on him by Defendant Shaw were a "bit snug" but were not cutting into him.  Pl.'s Dep. at 97:21-24.  Plaintiff then states that Defendant Shaw physically pushed him against the wall or slammed his head against it however, that he did not voice any complaints about this conduct to anyone and did not report any injury to the MTA upon examination for placement in Ad-Seg because there was no blood or bruising.  Pl.'s Dep. at 102-103, 106.  The U.S. Supreme Court has stated that "not every malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  Here, Plaintiff has conceded that the injuries were not only de minimis but that he was not even sure that the actions by Defendant Shaw were taken in retaliation for his verbal reporting of the misconduct by Officer Martin and Defendant Lopez.  Based on the above, Plaintiff has failed to meet his burden in establishing the existence of a genuine issue of material fact with respect to this claim.  Accordingly, the Court finds Defendant Shaw is entitled to summary judgment on the claim of excessive force in retaliation.

**E.  CONCLUSION AND RECOMMENDATION**

       The Court RECOMMENDS that the Motion for Summary Judgment be GRANTED with respect to the Due Process claim concerning the procedures used, the retaliation claim against all Defendants for Plaintiff's validation as a gang member and the excessive force in retaliation claim against Defendant Shaw.  The Court RECOMMENDS that the Motion be DENIED with respect to the insufficiency of the evidence used to validate Plaintiff in violation of Due Process, and the vagueness and overbreadth claim concerning the applicable California regulation.  The Court further RECOMMENDS that Defendants be afforded the opportunity to file a second Motion for Summary Judgment in order to cure deficiencies outlined in these Findings and Recommendations.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within FIFTEEN (15) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 7, 2006**          /s/ Sandra M. Snyder
icido3                                    UNITED STATES MAGISTRATE JUDGE