IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MARTINEZ, | 1:03-cv-05125-OWW-SMS-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION TO THAT DEFENDANTS' SECOND MOTION |
| vs. | FOR SUMMARY JUDGMENT BE GRANTED |
| W. SHAW, YBARRA, F. A. RODRIGUEZ, LONNIE LOPEZ, J. L. COBBS, AND | (Doc. 94.) |
| KERRI BERKELER, | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |
| Defendants. | |

Plaintiff John R. Martinez ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's amended complaint, filed July 30, 2003, against defendants W. Shaw, Ybarra, F. A. Rodriguez, Lonnie Lopez, J. L. Cobbs, and Kerri Berkeler, for violation of due process under the Fourteenth Amendment by a gang validation without sufficient evidence, and challenging the constitutionality of a California regulation as overbroad. (Doc. 13.) Now pending is defendants' second motion for summary judgment. (Doc. 94.)

**I.    RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on January 30, 2003. (Doc. 1.) On July 30, 2003, plaintiff filed an amended complaint. (Doc. 13.) On August 5, 2004, the court issued an order finding plaintiff's amended complaint stated cognizable claims against defendant Shaw for excessive force; defendants Shaw, Ybarra, Comfort, Berkeler, Cobbs, Rocha, and Holland for violating plaintiff's right to due process; and defendants Shaw, Ybarra, Comfort, Lopez and Rodriguez for retaliation. (Doc. 16.) The court also found that the amended complaint did not state any cognizable claim against defendant

1  Alameida. Id. On August 27, 2004, the court issued findings and recommendations to dismiss defendant
2  Alameida from the action. (Doc. 19.) The District Court adopted the findings and recommendations
3  on October 13, 2004, and defendant Alameida was dismissed from the action. (Doc. 23.)

4        On December 10, 2004, defendants moved to dismiss defendants Rocha and Holland from the
5  action on the grounds that plaintiff did not state a cognizable constitutional claim against them for
6  participating in the appeals process. (Doc. 33.) Plaintiff did not oppose the motion and instead, filed
7  his own motion to dismiss defendants Rocha and Holland from the action on December 30, 2004. (Doc.
8  36.) Plaintiff further requested defendant Comfort be dismissed from the action based on plaintiff's
9  belief he could not prevail against defendant Comfort for a constitutional violation. Defendants did not
10 oppose the motion. Id. On February 3, 2005, the court issued a report and recommendation that
11 plaintiff's motion to dismiss be construed as a statement of non-opposition to defendants' motion to
12 dismiss defendants Comfort, Rocha and Holland. (Doc. 38.) The District Court adopted the
13 recommendation on April 7, 2005, and defendants Comfort, Rocha and Holland were dismissed from
14 the case. (Doc. 39.)

15       On November 18, 2005, the remaining defendants, Shaw, Ybarra, Rodriguez, Lopez, Cobbs, and
16 Berkeler filed a motion for summary judgment. (Doc. 58.) On November 22, 2005, defendants
17 amended the motion. (Doc. 61.) On May 22, 2006, plaintiff filed an opposition. (Doc. 71.) On
18 September 11, 2006, the court issued findings and recommendations to grant summary judgment with
19 respect to the due process claim concerning the procedures used to validate plaintiff, the retaliation claim
20 against all defendants, and the excessive force claim against defendant Shaw. (Doc. 81.) The court
21 recommended denial of summary judgment with respect to the insufficiency of the evidence used to
22 validate plaintiff in violation of due process, and the vagueness/overbreadth claim concerning the
23 applicable California regulation. Id. The court further recommended that defendants be afforded the
24 opportunity to file a second motion for summary judgment to cure deficiencies. Id. The District Court
25 adopted the recommendation on November 16, 2006. (Doc. 84.)

26       On February 26, 2007, defendants Shaw, Ybarra, Rodriguez, Lopez, Cobbs, and Berkeler filed
27 a second motion for summary judgment, which is currently pending. (Doc. 94.) On September 10,
28 2007, plaintiff filed an opposition to the motion. (Doc. 103.)

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges in the amended complaint that defendants violated his rights to due process when they arbitrarily initiated gang validation proceedings against him, which led to his confinement in Administrative Segregation ("Ad Seg"). The events at issue allegedly occurred at the California Substance Abuse Treatment Facility in Corcoran while plaintiff was incarcerated there. In the amended complaint, plaintiff names W. Shaw, D. A. Ybarra, R. M. Comfort, F. A. Rodriguez, Lonnie Lopez, Kerri Berkeler, J. F. Rocha, K. Holland, J. Cobbs, Ed Alameida as defendants.[1] All of the defendants are employees of the California Department of Corrections and Rehabilitation ("CDCR").

Plaintiff alleges that on December 8, 2001, defendants placed him in Ad Seg and validated him as a gang associate in violation of due process.[2] The amended complaint alleges that the evidence used to validate plaintiff as a gang member was insufficient in that it did not constitute "some evidence." Finally, plaintiff alleges that California regulation 15 CCR § 3378(c)(4) which pertains to identification of a gang associate, is unconstitutionally overbroad. Plaintiff complains of severe physical and psychological pain and suffering as a result of defendants' conduct. Plaintiff requests declaratory and injunctive relief, compensatory and punitive damages, and costs of suit.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

---

[1] Defendants Alameida, Rocha, Holland and Comfort were later dismissed from the action. (Docs. 19, 39.)

[2] Although Plaintiff may have conceded that his due process claims are against defendants Ybarra, Shaw and Cobbs only, no second amended complaint or motion to dismiss claims or defendants has been formally filed by plaintiff. Plaintiff may not amend his complaint via a deposition. Accordingly, defendants Rodriguez, Lopez, and Berkeler remain part of the action.

3

solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56©. The

evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**IV.     UNDISPUTED FACTS RELEVANT TO EVIDENCE FOR GANG VALIDATION**[3]

1. Before Martinez's incarceration, he was a member of the "Plas" street gang. Ex. A, 18:24-21:21.

2. He was convicted of second-degree murder in the death of a rival gang member. Ex. A, 18:24-21:21.

3. Before being housed at the Substance Abuse and Treatment Facility (SATF) in Corcoran, California, Plaintiff was at Pelican Bay State Prison. Ybarra Decl. ¶ 5.

4. While in the custody of CDCR, Plaintiff assaulted another inmate. He was sent to Pelican Bay State Prison, where he was housed in the security housing unit (SHU) for that assault. Ex. A, 27:6-28:15.

5. He was housed with an inmate who was a validated associate of the EME prison gang. Ex. A, 29:2-25.

6. On September 3, 2000, while Martinez was at Pelican Bay, a confidential informant disclosed to correctional officials plans for Southern Hispanics to attack staff members at Pelican Bay. Martinez was one of several inmates identified by this informant as an armed member of the Southern Hispanics. In accordance with California Code of Regulations, title 15, section 3321(c)(2), the reliability of this information was

---

[3] On September 10, 2007, plaintiff filed an opposition to the motion for summary judgment, stating that he disputes defendants' statement of undisputed facts. (Doc. 103 at 1 ¶ 2.) However, plaintiff neither admitted or denied any of the specific facts set forth by defendants as undisputed. See Local Rule 56-260(b). Therefore, the court has compiled the summary of undisputed facts from defendants' statement of undisputed facts and plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e). Because plaintiff neither submitted his own statement of undisputed facts nor addressed specific facts in defendants' statement of undisputed facts, the court accepts defendants' version of the undisputed facts where plaintiff's verified complaint is not contradictory.

5

|   |   |   |
|---|---|---|
| | | corroborated by information provided by two other confidential informants, and by information provided by nonconfidential sources. Investigative staff memorialized this information in a confidential memorandum dated September 13, 2000. Ex. B. |
| | 7. | "Southern Hispanics" is the name of a group affiliated with the prison gang known as the Mexican Mafia, also known by its initials, EME. Northern Hispanics are a group associated with another Latino prison gang, Nuestra Familia. Ybarra Decl., ¶ 7. |
| | 8. | In accordance with California Code of Regulations (C.C.R.), title 15, section 3321(c)(2), the reliability of this information was corroborated by information provided by two other confidential informants. Cal.Code Regs., Tit. 15, § 3321(c)(2); Ex. B. |
| | 9. | On December 5, 2000, another investigator at Pelican Bay wrote a memorandum describing an interview with a different confidential informant. In this report, the informant provided details of planned assaults on staff by members of the Mexican Mafia, including communications between EME members and Martinez regarding the planned assaults. The informant's report was corroborated by: 1) the report of the first informant described above, as well as information from other informants; 2) the fact that a selfadmitted gang leader admitted participating in discussions about the planned assaults; 3) observations by correctional officers regarding the movements of the informant and his association with other prisoners whom he claimed were involved in the plans to assault staff; and 4) the information was self-incriminating, in that it implicated the informant in the planned assaults. Ex. C. |
| | 10. | A third confidential memorandum, dated October 3, 2001, describes an interview with a third informant conducted by Officer Shaw at SATF. That informant identified many members and associates of the EME. He specifically identified Martinez as an associate of EME, and he identified other EME associates who reported to Martinez. The informant's information was deemed reliable because it incriminated the informant as an EME member, and most of the information was verified through telephone calls to other institutions, documents in his central file, and references in the Offender Based Information System (OBIS). OBIS allows correctional officers to determine where inmates are housed, and thus to determine whether an informant is accurate when identifying where a given inmate was when relevant events occurred. Ex. D; Ybarra Decl. ¶ 10. |
| | 11. | Staff generated a fourth confidential memorandum on November 13, 2001. The memorandum describes documentary evidence of Martinez's involvement in EME activities. Ex. E. |
| | 12. | On December 18, 2001, Plaintiff was validated as a gang associate, and assigned an indeterminate term in the SHU, pursuant to title 15, section 3378. Exhibit F; Berkler Decl.¶¶ 3-5. |

**IV.    PLAINTIFF'S CLAIMS**

    **A.    <u>Due Process – Sufficiency of Evidence for Gang Validation</u>**

        **1.    <u>Gang Validation Process</u>**

An inmate may be identified by CDCR staff as a potential gang member or associate based on his behavior. An Institutional Gang Investigator ("IGI"), who generally has experience with gangs, investigates the inmate's possible gang activities and determines whether there is sufficient evidence to

1  validate the inmate. 15 Cal.Code Regs. § 3378©.  The IGI also interviews the inmate to allow him to
2  rebut the evidence supporting the contemplated validation.

3        Under California State Regulations, an inmate may be validated as a member or associate of a
4  gang based on a *minimum* of three or more source items indicating gang activity, such as self-admission,
5  writings, tattoos, photos, information from informants, and association or communication with other
6  gang members or associates.  15 Cal.Code Regs. § 3378(c)(3), (4).  The inmate is normally placed in
7  administrative segregation pending review and if validated, assessed an indeterminate administrative
8  segregation term in the Secured Housing Unit.  Id.; 15 Cal.Code Regs § 3341.5(c)(2).  Once validated
9  as a gang member/associate, an inmate can be released under several circumstances, the most common
10 of which are debriefing (i.e., disassociating himself from the gang), inactivity in the gang and release
11 from custody.  15 Cal.Code Regs. §§ 3378(c)(2)(5); 3341.5(c)(4).

### 2.  Legal Standard

13       Interests that are procedurally protected by the Due Process Clause may arise from the Due
14 Process Clause itself and the laws of the states.  Hewitt v. Helms, 459 U.S. 460, 466 (1983) *overruled,*
15 *in part, on other grounds by* Sandin v. Conner, 515 U.S. 472, 483-484 (1995); Meachum v. Fano, 427
16 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976).  The Ninth Circuit has held that the hardship associated with
17 administrative segregation is not so severe as to violate Due Process.  See Toussaint v. McCarthy, 801
18 F.2d. 1080, 1091-91 (9th Cir. 1986).  However, changes in the conditions of confinement may amount
19 to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty
20 interest in question is one of "real substance" and where the restraint "imposes an atypical and
21 significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S.
22 at 477.

23       The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty
24 interest of "real substance" within the meaning of Sandin.  See Wilkinson v. Austin, 125 S.Ct. 2384,
25 2394-95 , 162 L.Ed.2d. 174 (2005).  Further, the assignment of validated gang members to the SHU is
26 an administrative measure rather than a disciplinary measure, and is "essentially a matter of
27 administrative segregation."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (*quoting* Munoz v.
28 Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As such, plaintiff is entitled to the minimal procedural

protections set forth in Toussaint, such as notice, an opportunity to be heard and periodic review. Bruce, 351 F.3d at 1287 (*citing* Toussaint, 801 F.2d at 1100). Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce, 351 F.3d at 1287-88.

In addition, there is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); see also, Toussaint, 926 F.2d at 803, *cert. denied*, 502 U.S. 874, 112 S.Ct. 213 (1991) (considering accuracy of polygraph results when used as evidence to support placement in administrative segregation); Cato, 824 F.2d at 705 (evidence relied upon by a prison disciplinary board must have "some indicia of reliability"). When this information includes statements from confidential informants, as is often the case, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable." Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2851 (1988). The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." Id. Defendants bear the burden of showing "some evidence" in the record to support an administrative segregation decision and that evidence must have some indicia of reliability." Toussaint v. Rowland, 711 F.Supp. 536, 542 (N.D. Cal. 1989) ("Toussaint V"), *aff'd in part, rev'd in part sub nom,* Toussaint, 926 F.2d 800 ("Toussaint VI"), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213 (1991).

**3.     Discussion**

Plaintiff alleges in the amended complaint that the evidence used to validate him as a gang member is "unreliable" and thus, does not constitute "some evidence." Amd. Cmp. at 25:25-28, 28:4-6.

In their second motion for summary judgment, defendants maintain there was ample evidence to justify plaintiff's validation as a gang associate and member of the EME (Mexican Mafia Gang). Defendants submitted four confidential memoranda to the court, containing the information used by defendants to support the decision to segregate plaintiff. Defendants maintain that their sources of information were reliable under 15 CCR § 3321, in which a confidential source is established as reliable if satisfies one or more of five criteria:

(1) the confidential source has previously provided information which proved to be true;
(2) Other confidential sources have independently provided the same information;
(3) The information provided by the confidential source is self-incriminating;
(4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources;
(5) The confidential source is the victim.

15 CA ADC § 3321©. Defendant Berkeler reviewed the gang validation package for plaintiff, which consisted of the four confidential memoranda, and found it reliable under §3321. See Deft's Exh to MSJ, Berkler Decl. Defendant Berkeler confirmed the validation package consisted of at least three independent source items containing information indicative of Martinez' association with other gang affiliates or indicative of Martinez' actual gang activity; and in the instances where information was obtained from a confidential source, she confirmed the source's reliability had been evaluated and addressed by the author of the report. In this case, she did not consider information that was more than five years old, to ensure that the validation was based on reasonably current information." Id. at 2 ¶3. In their motion for summary judgment, defendants listed the evidence disclosed in each of the four confidential memorandums and the reasons the confidential informants were reliable under §3321, as follows:

First Informant/Memorandum – On September 3, 2000, a confidential informant disclosed to correctional officials plans for Southern Hispanics to attack staff members at Pelican Bay. Martinez was one of several inmates identified by this informant as an armed member of the Southern Hispanics. (See Exh B to Deft's MSJ.) The source was reliable under 15 CCR §3321 because the information was

///

corroborated by information provided by 2 other confidential informants and by information provided by non-confidential sources.

<u>Second Informant/Memorandum</u> – On December 5, 2000, another investigator wrote a memorandum describing an interview with a different confidential informant. The informant provided details of planned assaults on staff by members of the Mexican Mafia, including communications between EME members and Martinez regarding the planned assaults. (See Exh C to Deft's MSJ.) The source was reliable under 15 CCR §3321 because the informant's report was corroborated by the First Informant's report, by information from other informants, by the fact that a self-admitted gang leader admitted participating in discussions about the planned assaults, and by observations by correctional officers regarding the movements of the informant and his association with other prisoners whom he claimed were involved in the plans to assault staff. In addition, the information was self-incriminating, in that it implicated the informant in the planned assaults.

<u>Third Informant/Memorandum</u> – On October 3, 2001, the third confidential memorandum describes an interview with a third informant conducted by Officer Shaw at SATF. The informant identified many members and associates of the EME. He specifically identified Martinez as an associate of EME, and he identified other EME associates who reported to Martinez. (See Exh D to Deft's MSJ.) The source was reliable under 15 CCR §3321 because the information incriminated the informant as an EME member. Also, most of the information was verified through telephone calls to other institutions, documents in plaintiff's central file, and references in the Offender Based Information System ("OBIS").[4]

<u>Fourth Memorandum</u> – On November 13, 2001, prison staff generated a fourth confidential memorandum describing documentary evidence of Martinez's involvement in EME activities. (See Exh. E to Deft's MSJ.)

The Court has examined *in camera* the four confidential memoranda submitted by defendants and finds that the information relied on by correctional officers more than meets the "some evidence" standard. Defendants have submitted four source items consisting of three memoranda written after

---

[4] According to defendants, OBIS allows correctional officers to determine where inmates are housed, and thus to determine whether an informant is accurate when identifying where a given inmate was when relevant events occurred.

interviews with confidential informants and one memorandum generated by correctional staff, indicating gang association or activity by plaintiff. The fact that the correctional officers relied on four source items indicating gang activity satisfies the requirements of "a *minimum* of three or more source items" under 15 Cal.Code Regs. § 3378©. The fact that the three confidential informants independently reported that plaintiff was involved as a member or associate of the EME (Mexican Mafia) and Southern Hispanics is sufficient to satisfy the "minimally stringent" standard in Cato which only requires *any* evidence that *could* support the decision-makers' conclusion. Cato, 824 F.2d at 705. Further, Martinez was identified as an armed member of the Southern Hispanics who was known to communicate about the planned attacks with other EME members, some who reported to him. In addition, staff members observed Martinez associating with other inmates who were identified as those planning the assaults. Thus, the "some evidence" standard is met.

Defendants have also shown evidence that the confidential informants were reliable sources of information using the criteria in 15 CCR §3321. The first informant's report was corroborated by information provided by two other confidential informants and by information provided by non-confidential sources. The second informant's report was not only corroborated by the other two informants' reports, but was self-incriminating because the informant admitted participating as a leader in discussions about the planned assaults. The third informant's report was also self-incriminating, and most of the information was verified through telephone calls to other institutions, documents in plaintiff's central file, and references in OBIS.

The *informant's* reliability, however, is not the critical issue. Cato, 824 F.2d at 705. The critical issue is whether the *evidence itself* has some "indicia of reliability." Id. Defendants maintain that the information that Southern Hispanics were planning to attack staff members at Pelican Bay and that Martinez was an armed member was reliable because it was corroborated by information provided by non-confidential sources. The detailed information of planned assaults on staff by members of the Mexican Mafia, including communications between EME members and Martinez, was supported by observations of correctional officers regarding the movements of the informant and his association with other prisoners whom the informant claimed were involved in the plans to assault staff. Most of the identifications of members and associates of the EME, including plaintiff, were verified through

telephone calls to other institutions, documents in plaintiff's central file, and references in OBIS. Prison staff presented documentary evidence of plaintiff's involvement in EME activities. The reliability of the information was also established by the court's *in camera* review of the documentation from which the credibility was assessed. Zimmerlee, 831 F.2d at 186-87.[5] The court has thoroughly examined the four confidential memoranda and found sufficient factual information therein from which officers could reasonably conclude that the information given by the informants was reliable. As further evidence of reliability under Zimmerlee, each of the memoranda included a statement by the reporting officer indicating that the memorandum should be deemed confidential due to information which if known would endanger the safety of persons and jeopardize the security of the institution.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service, 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff filed an opposition to defendants' motion for summary judgment on September 10, 2007. (Pltf's Opp, Court Doc. 103.) Plaintiff argues that defendants did not have sufficient reliable evidence to validate him as a gang member or associate and, therefore, they should not have placed him in segregation.

In the verified amended complaint, plaintiff claims that the allegations against him by defendant Ybarra in the CDC 114-D form dated November 28, 2001 were knowingly false. (Amd. Cmp. at 10 ¶2, Court Doc. 13; Exh A to Defts First M SJ, Court Doc. 58.) Plaintiff vehemently denies "creating unrest" between inmate race groups. Plaintiff alleges that after a major riot occurred between Southern Hispanic

---

[5] No source items were before the court until the confidential memoranda were filed under seal by defendants on February 27, 2007.

and White Inmates on July 19, 2001, he was one of the Men's Advisory Committee ("MAC") representatives that worked closely with and assisted defendants Lopez, Rodriguez and Comfort in restoring and encouraging peace between these two groups of inmates. Plaintiff claims that he and other MAC representatives from both the Hispanic and white inmate population were successful in eliminating animosity and restoring peace, which resulted in Southern Hispanic and white inmates programming together again on the main recreation yard without further conflict or violence. (Amd Cmp at 10-11.) Plaintiff submits as evidence a copy of the MAC Membership Roster dated September 6, 2001, showing his name listed, and a Memo by defendant Comfort dated September 4, 2001, documenting a meeting held to reward the good faith effort by the Southern Hispanics to restore peace with white inmates. (Exh E to Pltf's Opp).

Plaintiff alleges that at the time the information implicating him as a criminal conspirator to assault staff was allegedly provided, he was housed in the inmate General Population at Pelican Bay State Prison with a work assignment and was assigned to the highest privilege group (A-1-A).[6] (Amd Cmp at 14 fn 6.) He alleges that at that time, he had not been placed in segregation pursuant to §3335(a) and was instead allowed to mingle with correctional officers. Id.

Plaintiff alleges that part of the information was provided by the informants after coercion and intimidation, and that defendants induced the sources to provide information in exchange for better living conditions. Id. Plaintiff also alleges that the allegations against him are based on rumors and hearsay and not first hand knowledge. Id. In his opposition, plaintiff argues that the information is not reliable because the statements are conclusory and under Sira v. Morton, "[A]s the Supreme Court has long cautioned, a conclusory statement of culpability provides 'virtually no basis at all' for a reviewing officer to make a reasoned and independent judgment on the matter at issue." Sira, 380 F.3d at 80 (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983).

Plaintiff argues that the lists of names identifying inmates associated with the ENE are not sufficient evidence of his gang membership. He argues that the lists constitute "laundry lists," which were excluded as identification evidence by a Settlement Agreement reached with the California

---

[6] Plaintiff refers to two interviews with confidential informants which took place on September 13, 2000, and December 15, 2000. (Amd Cmp at 12 ¶5.)

Department of Corrections ("CDC") in Castillo v. Alameida, No. C-94-2847, Doc. 420 (N.D. Cal. 1994). (Exh B to Pltf's Opp at ¶21). In the Settlement Agreement, defendants agreed to propose codification of changes to 15 CA ADC §3378(c)(8)(H) as follows:

> Confidential Sources. (Title 15 §3378(a)(8)(H)). Defendants agree that "laundry lists" – that is, when confidential sources, including debriefers, identify a prisoner as an associate or member by listing names of inmate(s) without reference to gang-related acts performed by the inmate(s) – shall not be relied upon as a source item. Defendants agree that the confidential source must identify specific gang activity or conduct performed by the associate or member before such information can be considered as a source item. This information shall be recorded by staff and provided on a written form given to the inmate.

Id.

Plaintiff argues that the First Memorandum submitted as evidence by defendants cannot be used as an independent source item to identify him as a gang associate. Plaintiff states that identification of an inmate as a gang associate under 15 CA ADC §3378(c)(4) requires "at least three (3) independent source items of documentation indicative of association with validated gang members or associates," and the First Memorandum identifies plaintiff as a member of the Southern Hispanics, not as a member of the EME prison gang. Plaintiff argues that "mere affiliation in the Southern Hispanics is not proof of . . . unlawful association with validated prison gang affiliates." (Pltf's Opp at 11 ¶3). Plaintiff also argues that defendants claim he was "armed" but did not produce any evidence he was in possession of a weapon while housed in the General Population ("GP") at Pelican Bay State Prison ("PBSP"). Plaintiff reasons that if he was truly armed, he would have never been permitted to "roam the GP at PBSP" during that time. Id. at fn 7.

Plaintiff argues that the Second Memorandum submitted as evidence by defendants is not reliable because there is no factual evidence as required by Sira. Plaintiff states that the "some evidence" standard also requires that information provided by informants contain "some factual information." Zimmerlee, 831 F.2d at 186. He argues that the informant statement about "communications between EME members and plaintiff regarding the planned assaults" is conclusory and unsupported by any factual basis or corroborating documentation, such as actual communications about the planned attacks or identification of EME members plaintiff was communicating with. Plaintiff reasons that if defendants

///

14

had found the informant reliable, he would have been placed in segregation at the time of the interview, per 15 CCR 3335(a) which states:

> When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.

15 CCR 3335(a).

Plaintiff argues that the evidence of his involvement in a criminal conspiracy, written in the Third Memorandum, is not reliable. As evidence, plaintiff submits a copy of a crime/incident report on form CDC-837 from PBSP dated April 25, 2001, which does not include plaintiff's name on the list of inmates known to be involved in the conspiracy. (Exh D of Pltf's Opp). According to the report, the investigation began on February 27, 2001 and included information "gathered from confidential memorandums written by staff over the last year." Id. Plaintiff alleges that he was incarcerated at PBSP and housed in the GP on the date the investigation began, and he was not transferred to SATF until March 29, 2001. Plaintiff argues that if he had been a member of the conspiracy, his name would have appeared on the list of names of the inmates with enough evidence against them to be charged with conspiracy.

Plaintiff's evidence does not reveal a genuine issue of material fact as to whether correctional officers had *any* evidence with an *indicia* of reliability that *could* support the conclusion they reached. Plaintiff provides evidence that the information against him is not true and does not prove gang association or membership. However, to satisfy due process, defendants did not need to *prove* gang association or validation. Instead, they needed to show minimal evidence with some indicia of reliability to support their conclusion. This was met. Plaintiff provides evidence that the CDCR did not follow the rules in the settlement agreement from Castillo, C94-2847-MJJ-JCS. However, the settlement agreement did not establish any rules for the CDCR. Parties to the settlement agreement only agreed to *attempt* to codify changes to the rules, and the changes have not been codified. Further, even if plaintiff proved defendants violated those rules, such evidence would not disprove officers had the evidence they needed. Plaintiff provides evidence that the informants' statements were conclusory and

15

unsupported by any factual basis. However, the question is not whether the information was true. Circumstantial evidence would suffice, and defendants were not required to conduct further research to determine whether the allegations against plaintiff were true. Defendants are therefore entitled to judgment as a matter of law on plaintiff's due process claim against them.

### B. Claim That California Regulation 15 CCR § 3378(c)(4) is Overbroad

#### 1. Legal Standard

The focus of a claim for overbreadth is whether a regulation "sweeps within its prohibitions what may not be punished" under the Constitution. Grayned v. City of Rockford, 408 U.S. 104, 115 (1972). In the prison context, when regulations or policies are alleged to impinge upon an inmate's protected rights, subject to certain exceptions, the regulation is analyzed under the test set forth in Turner v. Safley, 482 U.S. 78 (1987). Bahrampour v. Lampert, 356 F.3d 969, 975-76 (9th Cir. 2004) (applying Turner test despite inmate's assertion that vagueness and overbreadth claims must be considered separate and apart from application of Turner test.)

Under the Turner test, the court considers four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it, and the governmental objective must itself be a legitimate and neutral one. Id. at 89-90. A second consideration is whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates. Id. at 90. Where "other avenues" remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation. Id. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Id. When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. Id. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Id. If an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Id. at 91.

///

**2.     Discussion**

Plaintiff argues that the Title 15 § 3378(c)(4) of the California Code of Regulations is overbroad because it prohibits plaintiff's "associations" with fellow prisoners, some who may very well be gang affiliated, for purposes of legal assistance, lawful associations and speech. Am. Compl. at 26.

Title 15, Section 3378(c)(4), of the California Code of Regulations states:

> An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an inmate/parolee as an associate of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.

First, defendants argue that the regulation at issue is rationally connected to a legitimate penological interest because regulations that restrict the ability of gang-associated inmates to communicate with each other serve the legitimate penological interest of preserving the internal security of the institution. Defendants also argue that the government objective is neutral because, under Bahrampour, 356 F.3d at 975, prison regulations that apply to California prison gangs, whose activities present specific inherent risks to prison security, are considered to be content neutral.

Second, defendants argue that plaintiff has alternative means of exercising the right to associate with inmates, because he is free to associate with fellow inmates who are not members or associates of a gang.

Third, defendants argue that the impact of allowing plaintiff to associate with gang members or gang associates would be substantial, because such association facilitates the planning and carrying out of gang activities and the ability of the gang to enforce internal discipline. Defendants argue that if plaintiff is allowed such association, it would result in significantly less liberty and safety for staff and other prisoners.

Finally, defendants argue that there are no obvious, easy alternatives to the policy codified in section 3378(c)(4), or other law enforcement officials would not have found it necessary to enact rules similar to the regulation at issue.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence

of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong, 474 F.2d at 749.

In his opposition to defendants' second motion for summary judgment, plaintiff stated his belief that the "court dismissed Plaintiff's overbroad claim when it screened Plaintiff's complaint for failure to state a claim," concluding that "[T]hus, this claim should not be subject to litigation, and in any event, Plaintiff moves to dismiss his overbroad claim from this action." The court construed plaintiff's statement as a motion to amend the complaint to withdraw the "overbroad claim," (Doc. 104), and denied the motion. (Doc. 105.)  By the motion to amend, plaintiff indicated his non-opposition to defendants' motion for summary judgment on the overbroad claim. Defendants are therefore entitled to judgment as a matter of law on plaintiff's claim that Title 15 § 3378(c)(4) of the California Code of Regulations is constitutionally overbroad.

      **C.**    **Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry, or first prong, is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step, or second prong, is to ask whether the right was clearly established. Id. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The court finds that defendants are entitled to judgment as a matter of law on plaintiff's procedural due process claim and plaintiff's claim that Title 15 § 3378(c)(4) of the California Code of

Regulations is constitutionally overbroad. Because of this finding, it is unnecessary to reach defendants' argument that they are entitled to qualified immunity.

## V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' second motion for summary judgment be GRANTED;

2. The Clerk of Court enter judgment for defendants in this action; and

3. This case be closed in its entirety.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)©. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    April 25, 2008                          /s/ Sandra M. Snyder
                                                  UNITED STATES MAGISTRATE JUDGE